specified as $4.50. The effect of section 234 is merely to give the defendant the option, in the cases therein prescribed, of demanding that the jury shall consist of twelve members, at the time he exercises his right under section 231 of demanding a jury trial. It is quite clear that, if he demanded a jury trial pursuant to the provisions of section 231, it would be necessary for him to deposit the fees for summoning the jury; and section 234 in that regard was intended to provide that in the event that he demands a jury of twelve, instead of the ordinary jury of six, he should deposit twice the amount which he would have been required to deposit under section 231 for a jury of six. I conceive it to be the proper practice under these statutory provisions for the plaintiff to deposit with the clerk the sum of $4.50 in case he demands a jury, and if the defendant also demands a jury and specifies, in a cause falling within the provisions of section 234, a jury of twelve, it becomes his duty likewise to deposit the same amount; but, where the defendant does not exercise his right to demand a jury trial, he has no election with respect to the number that will constitute the jury demanded by the plaintiff which the statute prescribes shall be six.

It follows that the determination of the Appellate Term shall be affirmed, with costs. All concur.

---

PEOPLE ex rel. NEW YORK, O. & W. RY. CO. v. SHAW et al.,
Town Assessors.

(Supreme Court, Appellate Division, Third Department.   March 8, 1911.)

1. TAXATION (§ 391*)—RAILROADS—VALUATION—BASIS.

For the purpose of taxation, the part of a paying railroad situated in a given district is properly valued at reproduction cost.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 660–666; Dec. Dig. § 391.*]

2. TAXATION (§ 391*)—RAILROADS—VALUATION—ELEMENTS.

In determining the taxable value of railroad property on the reproduction cost basis, items of interest on expenditures before operation cannot be considered, where the time in which it would take to place the railroad in operation is speculative.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 660–666; Dec. Dig. § 391.*]

3. TAXATION (§ 391*)—RAILROADS—VALUATION—ELEMENTS.

The cost of abstracts and condemnation proceedings is properly disallowed in determining the taxable value of railroad property on the reproduction cost basis, where it does not appear from how many owners the different parcels of land were taken, and there is no real basis upon which the item may be computed.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 660–666; Dec. Dig. § 391.*]

4. TAXATION (§ 391*)—RAILROADS—VALUATION—ELEMENTS.

In determining the reproduction cost of a piece of railroad five miles long, constituting a mere fraction of a line, an item for salary of president and auditor is properly disallowed.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 660–666; Dec. Dig. § 391.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. TAXATION (§ 391*)—RAILROADS—VALUATION—ELEMENTS.
    In determining the taxable value of railroad property on the reproduction cost basis, it is improper to allow more than the actual value of the land taken for a right of way, where it appears that benefits to adjoining owners would prevent additional damage to them.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 660–666; Dec. Dig. § 391.*]

6. TAXATION (§ 40*)—RAILROADS—EQUALITY WITH OTHER PROPERTY.
    Railroad property should be taxed on equality with other property.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 68–89; Dec. Dig. § 40.*]

Appeal from Special Term, Delaware County.

Certiorari by the People of the State of New York, on the relation of the New York, Ontario & Western Railway Company, against Augustus B. Shaw and others, Assessors of the Town of Hamden, Delaware County. From a final order, both parties appeal. Modified and confirmed.

. This is an appeal by both parties from a final order in a certiorari proceeding taken by the relator to review its assessment on 4.825 miles of its Delhi branch in the town of Hamden, which order was entered in Delaware county clerk's office October 18, 1910. The original assessment was $60,448, which the assessors determined was its fair valuation, equalized with other property. It does not otherwise appear upon what basis they arrived at this amount. The referee and the Special Term properly determined that other property in the town was assessed only 54.74 per cent. of actual value. The referee determined that the reproduction cost was the proper basis of valuation, which he fixed at $98,500, with an equalized value of $53,918.90. The Special Term, in the order appealed from, adopted the reproduction cost as the proper basis, which it fixed at $95,000, with an equalized value of $52,003.

Argued before SMITH, P. J., and KELLOGG, SEWELL, and HOUGHTON, JJ.

S. H. Fancher (C. L. Andrus, of counsel), for relator.

A. G. Patterson, for respondents.

JOHN M. KELLOGG, J. The proper rule for determining the value of a part of a continuous railroad which is situated in a given tax district is indicated in People ex rel. D. L. & W. R. R. Co. v. Clapp, 152 N. Y. 490, 494, 46 N. E. 842, 843, 39 L. R. A. 237. The question then before the court was the assessment of 7¼ miles of the main line, double track, of the Lackawanna Railroad in the town of York, between Binghampton and Buffalo. The court laid down the rule:

"The cost of reproducing these seven miles of railroad seems to us to be the just and reasonable rule of valuation. There is no reason that we can perceive for assessing this property at a greater sum than the cost of replacement. It may not in every case be worth what it would cost to reproduce it. That would depend upon the income or earning capacity of the road after it is built. But this is the case of a paying railroad, and, when valued at what it would cost to procure the land, construct the roadbed, put down the ties and rails, and erect the buildings and other structures, all new, it is difficult to see any ground for assessing it at a larger sum."

The reproduction cost is therefore the maximum valuation for the best and most profitable railroad, and may properly be considered the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

proper basis for valuation of a part of a paying road.· It is manifest that if a larger amount of money is spent in building a line of railroad. which produces no revenue, or no substantial revenue, that a great part of the money is practically lost, and that the reproduction cost is· no real measure of its value.

It is manifest from the record that the relator's road is not a paying road within the meaning of the Lackawanna Case. We may fairly infer that it is not producing an adequate income on the investment. While complaint is not made specifically to the application of the rule of reproduction cost in this case, it is urged that some items have been. included in such cost which under the circumstances should not prop- erly be considered. We refer particularly to the reproduction cost. rule to show that in this case the relator's property is measured by a harsh rule, which should not be applied too vigorously.

We have considered the several points raised by each party, and conclude that the decision of the court does not err to the prejudice of the town authorities, and is more than liberal to them, and that they have no substantial cause of complaint. The specific items urged by them will not, therefore, be fully referred to in this memorandum, except we may say, in passing, that the item of interest was properly. rejected by the court as speculative in amount and. unsupported by the evidence. Of course, each dollar, as it was expended in the rail- road, ceased to produce income until the road could be placed·in opera-; tion. One witness thinks it would take 18 months to put the road in operation. That must be mere guesswork. It is evident that about five miles of railroad may be built in much less time, and that the time employed would depend entirely upon the manner in which the work is pushed. · There is no substantial basis upon which the item of in- terest may be computed.

The court disallowed the $1,000 item for procuring abstracts and for condemnation proceedings, etc., upon the ground that it was specula- tive, and there is no proof that condemnation proceedings would be necessary. It does not appear from how many owners the different parcels of land were taken, and there is no real basis upon which this item may be computed.

The salary of president and auditor was properly disallowed. This is not a separate, independent road, built by a separate company, and it does not appear that any such expenditures would be necessary.

The alleged appreciation of embankment was properly disallowed. One of the witnesses for the assessors claimed that there was a grad- ual shrinkage and filling in from time to time, and such shrinkage might approach 10 per cent. The relator's witnesses quite well estab- lish that this item was already allowed for in the other items of shrink- age and in the items allowed for extra excavation. The decision of the court upon the merits is satisfactory until we approach the item of $15,000 for land, which is conceded to be three times the actual value of the land itself. Experience indicates that probably land through an agricultural country served by no railroad would be given gratuitously or upon reasonable terms for a right of way for a branch line like this. It is not fairly within probabilities that the farmers whose lands are to be taken and who are to be given the privileges of a railroad

would expect additional damages over and above the actual value of the land taken. The evidence upon the subject is purely speculative. I think the $10,000 over and above actual land value is not part of the reproduction cost, and its allowance is not sustained by the evidence or the facts in the case. It should therefore be disallowed.

The services and expenses of a right of way agent and paying agent, and traveling and other expenses, $1,500, does not seem to be sustained by the evidence, and is probably sufficiently embraced in other items, and I think the full reproduction cost of the property still remains, if this item is deducted.

A railroad is owned by the stockholders of the corporation, and is private property. It is built for the profit of the owners and the reasonable accommodation of the public. The public, so far as the right to receive a reasonable service at reasonable rates, is interested in the road, and may dictate to a considerable extent the manner and rates of service. The fact that the railroad has this quasi public quality does not permit that it may be used to relieve the other taxpayers of the town of their just share of taxation. For purposes of taxation the railroad is like any other property belonging to individuals, and its valuation should be determined upon a fair basis in the same manner; and while a railroad company should not escape any burden justly resting upon it as a property owner, it is not in the town for the purpose of having the burden of taxation which should properly fall upon the other taxpayers shifted upon it by local authorities. The assessors and the courts are not, therefore, called upon to indulge in imaginary or unwarrantable or unjustifiable figures to impose undue taxation upon a railroad company. An honest effort must be made to place the burden of taxation so that it will rest equally upon all property according to fair valuations. While other property was assessed at .54 per cent. of actual value, the relator was assessed considerably more than its reproduction cost, which in this case is more than the fair value of the property.

The question of costs is made embarrassing by the indefinite manner in which the defendant placed its claim for reduction before the assessors on grievance day. Its tax agent, in his affidavit, alleged that $60,448 is more than the full value of the property in the condition in which it was found, and unequal, because none of the other property in the town is assessed for more than 50 per cent. of its full value. He stated before the board that in his judgment $5,000 per mile would not be out of proportion to the value of the property, and that the company was willing to compromise on that basis. Later its treasurer was before the board and gave testimony as to the relator's claim, and in answer to the question as to "what reduction was asked," replied:

"That it be assessed at the same proportion of its full valuation, $51,439, as other property in said town."

This, with the petition, put the relator before the board as claiming that the actual value of its property was but $51,439, and that it should be assessed not more than 50 per cent. of that amount in order to equalize it with other property. In other words, it claimed a reduction of at least $34,729. This opinion indicates $83,500 as the reproduction

cost, and $45,708 as the valuation for assessment, making a net reduction by these proceedings of $14,700. The assessment, therefore, is reduced by an amount less than one-half of the reduction claimed before the assessing officers, and costs and disbursements against the relator are chargeable under section 294 of the tax law (Consol. Laws, c. 60).

The judgment of the Special Term was onerous to the relator, and it has been compelled to appeal, and has prevailed substantially on every question raised. Costs of the appeal may therefore be allowed to it.

The judgment is therefore modified, by fixing the assessment value at $45,708, and, as so modified, is confirmed, with costs of this appeal to the relator. All concur.