In the Matter of THE CITY OF NEW YORK, Relative to Acquiring Title to the Elevated Railroad Structure and Appurtenances of the Sixth Avenue Elevated Railroad in Trinity Place and Other Streets, in the Borough of Manhattan.

THE BOWERY SAVINGS BANK et al., Appellants; THE CITY OF. NEW YORK, Respondent.

First Department, December 11, 1942.

*Harold L. Leddy* for appellant Vincent Astor.

*Robert S. Tyson* of counsel (*Middlebrook & Sincerbeaux,* attorneys), for appellant The Manhattan Storage & Warehouse Company.

*John E. Buck* for objectant-appellant Hudson & Manhattan Railroad Company.

*Charles B. Fernald* for appellants Inheritance Realty Company and Gardes Realty Corporation.

*Charles Lamb* of counsel (*William Alston Lamb* and *Crawford W. Hawkins* with him on the brief) for appellants 605-611 Sixth Avenue Corporation et al.

*Ralph L. Baldwin* of counsel (*Truman H. Baldwin & Sons,* attorneys), for objectants-appellants The Trustees of Columbia University, Bank of New York, Bank of New York as trustee, etc., and The Havens Relief Fund Society.

*George L. Allin* of counsel (*Joseph R. Shaughnessy, Harry B. Chambers* and *Harry H. Chambers* with him on the brief; *Allin, Riggs & Shaughnessy* and *Chambers & Chambers,* attorneys), for objectants-appellants Franklin Savings Bank in the City of New York and others.

*Melville Southard* of counsel (*Cadwalader, Wickersham & Taft,* attorneys), for appellants The Bowery Savings Bank and numerous others.

*Alfred D. Jahr* of counsel (*Julius Isaacs, J. Osgood Nichols* and *Leo Brown* with him on the brief; *William C. Chanler, Corporation Counsel,* attorney), for respondent The City of New York.

CALLAHAN, J. This is an appeal by numerous property owners who have been assessed for benefit, from a decree in condemnation proceedings initiated by The City of New York to acquire title to the elevated railroad known as the Sixth Avenue Line, which was part of the railway system owned by the Manhattan Railway Company. A third of the cost of acquisition was assessed against the real estate in a local area, the limits of which were fixed by the Board of Estimate of the City of New York. This area extended back one hundred feet from the streets and avenue on which the railway was located. The two remaining thirds of the cost of acquisition were assessed against the taxable property throughout the borough of Manhattan and throughout the city of New York, respectively.

Some of the appellants claim that an excessive award was made for the property taken, based on insufficient evidence of value. Others assert that the assessments were levied on an illegal and inequitable basis. All claim that they were deprived of a proper hearing in this proceeding.

The situation which developed upon the trial of this proceeding was unusual, in that the city was not only the condemnor but the owner of the claim for the award. This came about by reason of the fact that the city acquired title to the condemned railroad line by voluntary purchase and sale from certain bondholders of the Manhattan Railway Company, who, in turn, had acquired the property in foreclosure proceedings brought in the Federal Courts. The purchase price paid by the city to

the bondholders was $12,500,000. Of this sum $9,000,000 was credited by satisfaction of a tax lien held by the city against the whole Manhattan Railway Company system. The city took an assignment of any award made in condemnation.

Upon the actual trial of this proceeding, the only appearance made was that of the corporation counsel on behalf of The City of New York. The trial, therefore, was in the nature of an inquest. The testimony offered by the city was given by four witnesses, one of whom related the cost of acquiring the easements of light, air, and access for the construction and operation of the elevated railroad, and gave an estimate of the value of these easements. A second witness gave brief testimony as to the cost of physically severing the Sixth avenue line from the remainder of the system. A third gave testimony not material to this appeal. The fourth and principal witness for the city gave expert testimony of valuation. This last witness rested his valuation on figures culled from the past experience of the elevated railroad system. From these figures he arrived at the conclusion that there was a possibility of operating the Sixth avenue line on a profitable basis. Concededly, The Manhattan Railway system, as a whole, had been operated at an increasing loss for many years. This witness held that it would be possible to sever the Sixth avenue division and make an operating profit. Based on this assumption, he gave an estimate of value in the sum of $12,591,015. The elements used in making this estimate consisted of an allowance for the structural or replacement value of the elevated railroad, plus the estimated value of the easements. In the latter item, the expert included a large sum to cover the cost of acquiring the easements, and interest on these expenditures.

Based upon this proof, the court made a tentative award in the sum of $12,519,063.77.

The corporation counsel in his brief states that this award was arrived at by the trial court by the addition of the cost of severance to the $12,500,000 purchase price. While we have no means of ascertaining whether this statement is correct, mathematically, at least, the sum awarded would support this statement.

After the entry of the tentative decree and upon the date set for the hearing of objections thereto, numerous property owners (designated as assessees) appeared and filed objections. They requested the court to reopen the proceedings for the purpose of permitting them to cross-examine the witnesses who had testified for the city on the earlier hearing and to permit them

to call witnesses in their own behalf to contradict the city's theory of estimated damage.

Other assessees asked for permission to call witnesses to establish that the proposed assessments for benefit, which had been placed on a uniform rate per front foot as to all property assessed, were not "in proportion to the amount of benefit received", as required by statute. The court took these requests under advisement and eventually decided to permit the assessees to cross-examine the city's witnesses but refused them the right to call witnesses in their own behalf. The court received formal offers of proof but rejected each offer.

After the cross-examination so permitted had been completed, the court overruled all objections, adhering to its prior fixation of damages and to its ruling as to the method of fixing assessments for benefit. In passing on the offers of proof, the trial court stated that, in its opinion, the assessees did not have an absolute right to be heard on the question of the amount of the award, citing as authority for that rule *Matter of City of New York [Crescent St.]* (217 N. Y. 294). The court, however, in the exercise of its discretion, granted the limited hearing heretofore referred to.

We think that in the light of the circumstances existing in this case any material proof offered by the assessees should have been received.

We find further that, if the amount of damage awarded for the property taken was based on the purchase price plus the cost of physical severance, an improper measure of damage was adopted.

In addition, we hold that in assessing for benefit the court was required to give due regard to any and all elements which might affect the question of "proportion of benefit received" by each piece of property assessed.

The rule in condemnations involving assessable improvements — that assessees ordinarily have no absolute right to be heard on the amount of damages awarded for property taken — rests upon the assumption that the corporation counsel gives adequate protection to the interests of such assessees. As was stated in *Matter of City of New York [Crescent St.]* (*supra*): "It is the bounden duty of the corporation counsel acting for the city to see to it that the awards made by the commissioners are not excessive; and the Legislature doubtless assumed that the discharge of his duty in that respect would prevent any injustice being done as to the parties assessed for benefit who by the exercise of the power of taxation would ultimately be compelled to pay the awards."

But in the present situation the corporation counsel in representing the city was not in the usual position of an advocate seeking to keep the award down to the lowest reasonable figure. Here the city was the owner of the award. The sole purpose in bringing the condemnation proceeding was to secure payment of a substantial part of the cost of acquisition from property owners benefited locally. The city, therefore, had an interest in keeping the amount of the award up to at least the $12,500,000 level represented by the purchase price, and the basis for the reasoning applied in *Matter of City of New York* [*Crescent St.*] (*supra*) did not exist. Under the circumstances, the right to a full hearing by those compelled to pay the award should have been recognized. This right was not satisfied by merely affording an opportunity to cross-examine the city's witnesses. The opportunity to offer affirmative evidence is essential where the right to contest issues exists. (*Morgan* v. *United States,* 304 U. S. 1; *Londoner* v. *Denver,* 210 U. S. 373.)

Nor was the right to be heard asserted too late here because it was made for the first time on the date set for hearing of objections. The assessees were not persons '' interested '' in the proceeding until an award was made. Their liability as owners of land assessed for benefit was not fixed until the award was confirmed. (*Matter of City of New York* [*Harrison Ave.*] 267 N. Y. 64.)

Having determined that the assessees have not received an adequate hearing, we are required to vacate the decree, and order a new trial. Though undoubtedly a substantially different record will be created upon the new trial, we feel that it may be well to give some indication of our views with respect to the general rules of law applicable to issues of the present nature.

As the city has resorted to condemnation proceedings, the rules applicable for measuring the value of property taken by eminent domain must prevail. That the city had agreed to purchase the property at a particular price or that the Federal courts in the foreclosure proceedings had fixed an upset price, which in both instances was $12,500,000, would have little, if any, probative force on the question of valuation in condemnation. The circumstances under which these figures were arrived at involved many considerations not material to the present inquiry. Here a railroad was being acquired which ran on an elevated structure occupying city streets under a franchise. The first essential question to be determined in fixing the value of property taken under such circumstances is to ascertain

whether the railroad was capable of profitable operation. If it was not, then the rule of damage indicated in *Matter of City of New York* (265 N. Y. 170) would be controlling. In that case it was conceded that the elevated railroad spur condemned was incapable of further profitable operation. Our Court of Appeals said that, under these circumstances, the damages recoverable were a sum representing the value of the easements of light and air formerly acquired, measured by the cost of acquisition thereof, as judicially determined when taken, plus the scrap value of the structure. The court held that nothing could be awarded for the franchise of an unprofitable railroad. When the case reached the Supreme Court of the United States on certiorari (*Roberts* v. *New York City,* 295 U. S. 264), the City of New York and the abutters were respondents. That court held that the damages awarded had been at least high enough and that no lack of due process existed. In its opinion, it indicated some doubt as to whether the easements taken had more than nominal value in view of the proof of unprofitable operation.

It is evident, therefore, that in the present case the first question which the trial court will be required to determine is whether the Sixth Avenue Line was capable of profitable operation.

Upon the trial already had, the city's expert gave an opinion tending to show that such operation would be possible if the Sixth Avenue Line were severed from the remainder of the Manhattan Railway system. Appellants claim that this opinion was based on fictitious estimates as to income and expense and erroneous theories of value, and that it omitted consideration of factors which would have had important bearing on the questions of income and expense, if such a severance had taken place. We need not at this time discuss these contentions in detail. Upon the new trial, undoubtedly evidence will be received from both sides on these issues. The court will then determine all questions anew including that as to whether the potential value contended for is based in reason or is too speculative to be considered.

If the court should determine that the Sixth Avenue Line was capable of profitable operation, then some fair measure of the value of the railroad as a going concern would have to be applied. Just compensation being required, the full and fair equivalent of the property taken is essential. (*Monongahela Navigation Co.* v. *United States,* 148 U. S. 312). The usual method of fixing such compensation is by ascertaining market

value. But we know that there is not usually a market for railroads in the ordinary sense. Other considerations may furnish an adequate guide in the absence of an actual market. Structural value measured by replacement or reproduction cost of the physical properties less depreciation may afford a reasonable basis for the valuation thereof. (*People ex rel. N. Y., O. & W. R. Co.* v. *Shaw,* 143 App. Div. 811; affd., 202 N. Y. 556; *New York Telephone Co.* v. *State of New York,* 169 App. Div. 318, 323; affd., 218 N. Y. 738.) Value of the easements held here would have to be considered. The franchise, if it had productive efficiency based on earnings, might be an element. Capitalization of established net income might furnish some guide for the value of the railroad as a whole. Of course, if the theory of operation at a profit required severance of the Sixth Avenue Line, the possibility of such severance and the effect thereof on cost of operation would be necessary considerations.

Assessment for benefit is deemed an exercise of the governmental power of taxation. Under the circumstances, the Legislature may fix any method of computing such assessments which does not unduly infringe on constitutional limitations. Where the Legislature fixed the front foot method of assessment for benefit, its action has been held to be within its constitutional powers. (*People ex rel. Scott* v. *Pitt,* 169 N. Y. 521.)

In the statute applicable to the present case (Administrative Code of the City of New York § B15–19.0; L. 1937, ch. 929), the Legislature has delegated to the Supreme Court the power and duty to determine the quantum of the benefit proportionately as between assessees. The administrative officers here fixed the zone within which they found that some benefit accrued. They did not attempt to divide the area benefited into subzones or subareas of benefit. The statute directed the courts to fix the assessment for benefit as to each piece of property within the specified zone " in proportion to the amount of benefit received." This clearly indicates that it is the duty of the court, in a proceeding of the present nature, to ascertain whether one piece or class of property has received benefit in greater or lesser degree, proportionately, than the next. To the extent that the benefit is disproportionate, that factor must receive adequate consideration in fixing the assessment. (See *Matter of City of New York* [*Pugsley Ave.*], 218 N. Y. 234.)

As we have not before us any evidence by the property owners on the question of inequality, we are loath to state whether sufficient circumstances exist in the present proceeding to require differentiation. Sufficient appears from the present

record, however, to show at least that there were many varying circumstances with respect to the physical proximity of the elevated structure to the building lines of the abutting properties, and with respect to the width of the streets and avenues upon which the elevated structure han. The quantum of deprivation of light and air, by reason of the existence of the structure, would seem to have differed in various parts of the area affected. Therefore, the benefit by restoration of the easement and any other factors relative to the proportionate benefit received should be given due consideration.

The other objections made by the various appellants appear to be without merit.

The decrees appealed from should be reversed and a new trial ordered, with one bill of costs to the appellants to abide the event.

MARTIN, P. J., UNTERMYER and DORE, JJ., concur; COHN, J., concurs in result.

Decrees unanimously reversed and a new trial ordered, with one bill of costs to the appellants to abide the event. Settle order on notice.