In the Matter of Staten Island Edison Corporation, Respondent, against Frank C. Moore et al., Constituting the State Board of Equalization and Assessment, Appellants, and City of New York, Intervenor-Appellant.

Third Department, August 8, 1958.

*Louis J. Lefkowitz, Attorney-General* (*Edward J. Grogan, Jr., John R. Davison* and *George A. Radz* of counsel), for appellants.

*Peter Campbell Brown, Corporation Counsel* (*Morris Einhorn* and *Morris Handel* of counsel), for intervenor-appellant.

*Patrick H. Sullivan, John V. Thorton* and *Bernard L. Sanoff* for respondent.

HERLIHY, J.  For the purpose of brevity, petitioner Staten Island Edison Corporation will hereafter be referred to as Petitioner; respondent State Board of Equalization and Assessment will hereafter be referred to as State Board and the intervenor City of New York will hereafter be referred to as Intervenor.

The State Board found the valuation of the special franchise property of the Petitioner for the tax year beginning July 1, 1952 to June 30, 1953 to be the sum of $3,806,304.  The Referee, as a result of the proceedings herein, has reduced that sum to $2,778,735 from which valuation the State Board appeals.  Sections 44–49 of the Tax Law of the State of New York gave to the Tax Commission authority as to " special franchise ".  Chapter 346 of the Laws of 1949 created the " State Board of Equalization and Assessment " and transferred to it among other duties that of " equalizing values of special franchise " and necessary procedure as outlined in the sections of the Tax Law mentioned above.  The said authorization has been extended (L. 1952, ch. 293; L. 1954, ch. 150; L. 1956, ch. 189) to April 1, 1959.

Petitioner is a public utility corporation organized under the laws of the State of New York, subject to the Public Service Commission, and engaged in the manufacture, distribution and sale of electric energy to public and private consumers in the borough of Richmond, city and State of New York and enjoys a " special franchise " as hereinafter defined and subject to such tax.

Section 2 of article XVI of the New York Constitution states: " The legislature shall provide for the supervision, review and equalization of assessments for purposes of taxation.  Assessments shall in no case exceed full value."

The Tax Law (§ 2, subd. 6) states:  " 6. The terms ' land,' ' real estate,' and ' real property,'  *  *  *  include  *  *  * all mains, pipes and tanks laid or placed in, upon, above or under any public or private street or place for conducting steam, heat, water, oil, electricity or any property, substance or product capable of transportation or conveyance therein  *  *  *  in-

cluding the value of all franchises, rights, authority or permission to construct, maintain or operate, in, under, above, upon, or through, any streets, highways or public places, any mains, pipes, tanks, conduits or wires, with their appurtenances, for conducting water, steam, heat, light, power, gas, oil or other substance, or electricity for telegraphic, telephonic or other purposes * * *. A franchise, right, authority or permission specified in this subdivision shall for the purpose of taxation be known as a ' special franchise.' A special franchise shall be deemed to include the value of the tangible property of a person, copartnership, association or corporation situated in, upon, under or above any street, highway, public place or public waters in connection with the special franchise. The tangible property so included shall be taxed as a part of the special franchise." (§ 8): "All real property subject to taxation shall be assessed at the full value thereof."

Prior to chapter 874 of the Laws of 1953, section 45 of the Tax Law required that the Tax Commission (State Board) " shall annually fix and determine the full and actual valuation of each special franchise subject to assessment in each city, town or village ".

There is no contention that the Petitioner has not for years been a prosperous and productive enterprise, now a part of " Consolidated Edison ". The only qualification to this statement would be that Petitioner claims that for the year 1952 the norm return should be 6% while actually it was 5.8%.

As shown by respondent's Exhibit 2, the original cost value of the Staten Island Edison Corporation on December 31, 1951 was $22,250,012.48 and a book depreciation of 25.70% amounted to $5,718,467.70, leaving a book value of that date of $16,531,544.78. For the same year the operating income from all sources amounted to $7,245,785 and after deductions under " operating income " which included an item of " depreciation " of $495,299, the operating income was $995,686. In arriving at " rate of return ", a total base of $16,991,110 (not the same as book value) was used, which resulted in an income rate of 5.86. The base figure used " as the tangible component of the special franchise " amounts to about 20% of the total book value as of December 31, 1951.

There are different theories and methods of valuation for tax purposes, the ones here involved being 1. Reproduction costs new less depreciation; 2. Depreciated original costs and 3. Net earnings.

With reference to (1), it was stipulated between the parties that the unit cost basis as installed new during 1951 would be

$8,443,500. It was further agreed that the depreciation rate in respondent's Exhibit 2 (25.70) to arrive at book value would amount to $2,289,200, which would result in " reproduction costs new less depreciation " of $6,154,300. Added to this other properties and work under construction and 5% for "intangibles", the total special franchise valuation under this method would be $6,546,951. The Intervenor contends that this is the proper method in this particular case but the respondent did not adopt such theory.

Mr. Justice BERGAN in *People ex rel. Lyford* v. *Allen* (286 App. Div. 621 [a distressed railroad]), not a special franchise case, said (p. 623): " The basic New York rule for arriving at the ' full value ' (Tax Law, § 8) for the assessment of railroad real property by local assessors was established in *People ex rel. Delaware, L. & W. R. R. Co.* v. *Clapp* (152 N. Y. 490 [1897]). It was there laid down that since other factors, including the use of personal property, enter into railroad earnings, the amount of earnings capitalized would not be a just basis of value for real estate taxation; and that the ' just and reasonable rule of valuation ' was reproduction cost (p. 494). Experience demonstrated, however, that where a railroad was losing money, the mechanical application of reproduction cost might itself be unjust; and it was the dictum of this court in 1911, that where the railroad operation is not profitable the ' fair value of its property ' may be less than the reproduction cost. (*People ex rel. New York, O. & W. Ry. Co.* v. *Shaw,* 143 App. Div. 811, affd. 202 N. Y. 556)."

In *People ex rel. Hudson & Manhattan R. R. Co.* v. *State Bd. of Tax Comrs.* (203 N. Y. 119, 124) the court said: " Under these circumstances, we think until it is shown by actual experience that the structure is worth less than the cost of reproduction, such cost is the best evidence of value."

Both Petitioner and State Board took from the books of Petitioner the original cost of property of $4,438,738.80. Both also agreed to an item of $3,778 additional (making the total base figure $4,442,516.80). The State Board then allowed an accrued depreciation of 15% against such base figure, making the depreciated original cost $3,776,139 as the " tangible component of the special franchise ". To this the board added 5% to represent the value of intangibles (equal to $188,803). The full value of the special franchise on December 31, 1951, as above computed, was $3,964,900. The equalization rate established for Richmond County of 96% was applied to the figure of the State Board resulting in a valuation for tax purposes of $3,806,304.

The contention of Petitioner, while in agreement as to the total base figure (*supra*), allowed an accrued depreciation of 26.88% (nothing for intangibles) arriving at a net book value of $3,245,600 as the "tangible component of the special franchise", which method was approved by the Public Service Commission.

The Referee took the same total base figure (*supra*). He allowed an accrued 25% depreciation (nothing for intangibles) for a net figure of $3,331,887 as the "tangible component of the special franchise". He applied a rate of 65% (State Board, 96%) but he did not allow that figure as he found the Petitioner was estopped and the most it was entitled to was $2,778,735.

The theory of the Petitioner is based upon methods and practices employed between it and the Public Service Commission. The Petitioner contended and the Referee has found that the Public Service Commission method of valuation for rate purposes was proper and controlling.

As to the valuation before equalization of the special franchise, an examination of the figures and formulas above will demonstrate that the difference is due to the "allowable depreciation" and the value of "intangibles".

In *People ex rel. Metropolitan St. Ry. Co.* v. *State Bd. of Tax Comrs.* (174 N. Y. 417, 439–440) it was said that special franchises are "specialties" and have "no market value." "The new property (special franchises) is real estate in name, but not in reality, for it is a mere privilege to do something in public streets and places not permitted to citizens generally." It was for these reasons that valuation of these specialties was taken from the general assessors and given to the State Tax Commission.

The problem was further discussed in *People ex rel. Jamaica Water Supply Co.* v. *State Bd. of Tax Comrs.* (196 N. Y. 39, 51–52) where the court said: "In our opinion it is beyond the province of the courts to lay down an exclusive rule of franchise valuation applicable to all cases. Of course, if there were only one reasonable method of getting at the true value of a special franchise, it would plainly be the duty of the state board to adopt that method. It is conceded, however, that there are many reasonable methods, and it is not for the courts to insist that one shall be pursued rather than another so long as the legislature has chosen to leave them all equally open to the assessing officers. *When a particular assessment comes up for review, as in the present case, the duty of the appellate courts is discharged when they inquire whether the rule whereby the value of this special franchise was ascertained was reasonably*

*adapted to that end, and, if so, whether it was consistently and correctly applied to the facts* ". (Emphasis supplied.)

If the method used by the Referee is to be accepted, it means in substance that so far as the State Board is concerned, it must accept a depreciation rate fixed by a different agency for a different purpose and based upon a different definition of " depreciation ". (*State ex rel. Public Service Comm.* v. *Southern Pacific Co.*, 95 Utah 84.)

This, we think, was not and is not the intent of the law and the State Board has the authority as it did in this case to arrive independently at a " reasonable " rate of depreciation.

The remaining question as to valuation concerns " intangibles " and it was the theory of the Petitioner and the Referee found that because the earnings were less than " normal ", the intangibles merged with the tangibles and therefore were not subject to an independent assessment. This was opportune because in theory the normal income should be 6% while the record showed for the year 1951 it was 5.86%. Once again we do not believe this argument to be tenable. The State Board has no control over the various items which are used in arriving at the earning ratio in accordance with accounting methods and practices prescribed by the Public Service Commission. The State Board employed a 5% figure for determining the value of the intangibles which seemed warranted on the record.

In *People ex rel. Jamaica Water Supply Co.* v. *State Bd. of Tax Comrs.* (*supra*) the court said (p. 56): " The net earnings rule contemplates a valuation upon the basis of the net earnings of the corporation which are attributable to its enjoyment of the special franchise. The method is thus applied: (1) Ascertain the gross earnings. (2) Deduct the operating expenses. (3) Deduct a fair and reasonable return on that portion of the capital of the corporation which is invested in tangible property. The resulting balance gives the earnings attributable to the special franchise. If this balance be capitalized at a fair rate we have the value of the special franchise."

" There is a presumption of sorts that the assessors' valuations are not excessive. The assessors ' are sworn officers, and as such, in absence of evidence to the contrary, are presumed to have done their duty.' " (*People ex rel. Wallington Apts.* v. *Miller,* 288 N. Y. 31, 33.)

This presumption places the burden of proof upon the Petitioner herein and of course, is rebuttable. Here the Petitioner produced two witnesses and the appellants two witnesses who testified as to valuation. Under the " burden of proof " rule, the State Board was entitled to be affirmed unless there was a

preponderance of evidence produced by the Petitioner. The evidence produced by it was based almost entirely upon methods used by another State agency and this, we feel, was not sufficient to permit the court below to exercise its judgment as against the duly constituted tax valuation authority.

On the equalization aspect of the case, the Referee found that the rate established by the State Board of 96% was not justified; and he found that the true equalization rate warranted by the proof before him was only 65%. This finding of the correct rate of equalization was not fully applied to the assessment by the Referee because he was of opinion that its application would reduce the assessed value below the money amount pleaded in the Petitioner's complaint to the State Board as the proper assessed value; and that the Petitioner was limited to a reduction in that amount. Thus the Referee found that a proper rate of equalization was 65% and allowed this rate to be reflected in the assessment to the extent he felt able to do so in view of the limitations of Petitioner's complaint.

The Referee himself accepted without apparent reservation and on its face value the testimony of a witness who described himself as a " tax specialist " dealing in " over-all assessment structures of various tax districts ". This testimony was not only largely grounded on hearsay reports made to the witness by various people working for him, but in our view of his testimony, it was so selective, in both its eliminations and inclusions of types of property within the tax district, as to distort the fair ratio of actual values as a whole to assessed values in the district.

This testimony of an " expert " on such a subject as " over-all assessment structures " should have had a guarded acceptance by the Referee when weighed against the presumption of regularity and correctness which ought to attach to the determination of a responsible State agency. Not only had the board followed the course of the statute in respect of notice and of hearing with regard to the rate of equalization but its established rate of 96% has been used in computing the assessment of the Petitioner herein for several years before the year in question without judicial challenge. (*People ex rel. Jamaica Water Supply Co.* v. *State Bd. of Tax Comrs.*, 196 N. Y. 39, *supra.*)

The Referee, apparently feeling he should give no weight whatever to the findings of the State Board unless it produced evidence, and accordingly no value to presumptions which might attach to its determination on the rate of equalization, seems to have been of the opinion that because the State Board and

the Intervenor offered "no proof" on equalization, he was required to sweep aside the board's determination and hold that "Decision must therefore rest solely on the proof adduced by the relator." This in turn consisted only of the reconstructions and opinions of the "expert".

We think that the rate of equalization is not to be so easily penetrated on judicial review; and even if the Referee may be right in feeling that some proof is necessary to support the rate of equalization fixed by the State Board, an opportunity ought to be granted to offer this proof.

We do not determine that no such opportunity existed on the trial; but in the review of this proceeding in which the State Board and the Intervenor seemed to have relied on the general insufficiency of the opinion evidence to destroy the determination of the State Board on this subject, the result has been that the determination of the board on equalization has been effectively destroyed.

We think that the interests of an adequate and full judicial review on this proceeding require that that issue be retried, or at least an opportunity given the State Board and the Intervenor to offer evidence in support of the board's determination, either in the general form in which relator offered it, by the specialists who prepared the studies for the board, or others, or in specific accord with the statutory requirements.

We accept the valuation of the tangible property as found by the State Board and accept also as a proper component of value the intangible property in the amount found by the board as justified and reasonable. The issue left for re-examination before the Referee is the issue of equalization.

The order should be reversed on the law and the facts and a new hearing directed before the Referee in accordance with this opinion, with costs to abide the event.

Coon, J. (dissenting). I dissent and vote to affirm upon the decision of the Referee. Upon the evidence in this record the Referee has arrived at "true value", the ultimate aim of all assessment cases, as against artificial valuation, for taxation purposes only. The evidence supports the Referee's reasoning and conclusions.

While I agree that the valuations fixed by the Public Service Commission are not binding and controlling upon the State Board, the Referee was entitled to consider them.

It seems incongruous to me that when one arm of the State fixes the valuation, rates, income, and sales price of a utility, another arm of the State may entirely disregard such valuation and arbitrarily fix a much higher valuation to collect more taxes

on what I regard as insufficient evidence. I need not elaborate, because the Referee has thoroughly discussed the situation and the evidence in his decision.

BERGAN, J. P., GIBSON and REYNOLDS, JJ., concur with HERLIHY, J.; COON, J., dissents and votes to affirm, in a memorandum.

Order reversed, on the law and the facts, and a new hearing directed before the Referee in accordance with the opinion, with costs to abide the event.