OPINION OF THE COURT
Harold E. Koreman, J.
In these proceedings brought pursuant to article 7 of the Real Property Tax Law to review certain special franchise assessments, the respondent State Board of Equalization and Assessment (hereinafter State Board) and various intervenorsrespondents move for an order granting partial summary judgment dismissing the portions of those petitions which seek to establish that the assessments were erroneous by reason of inequality in that the State Board arrived at and applied incorrect equalization rates in determining the special franchise assessments in question and which seek to establish what the equalization rates should be by substituting equalization rates derived from current sales in each of the taxing units in place of the equalization rates as found by the State Board.
Approximately 168 proceedings involving some 44 taxing units have been commenced to review assessments for the tax years 1974-1975 through 1977-1978 of special franchises owned by petitioner located within the five counties of New York City and in various municipalities in Westchester and Rock-land Counties.
The respondent State Board is vested with exclusive authority to determine the assessed valuation of all special franchise property located in this State (Real Property Tax Law, § 600).* The intervenors-respondents are the various municipalities and taxing units in which the special franchise properties are located.
The movants take the position that the issue raised by this motion is purely one of law, namely, whether inequality may be proved in these proceedings which were commenced pursuant to section 740 to review special franchise assessments, by resorting to evidence reserved for traditional inequality pro *493 ceedings brought by an owner of ordinary real property pursuant to section 720; and further that the petitioner may not seek to disprove the actual equalization rate utilized by the State Board, nor may it prove what the equalization rate should be. The respondent State Board and the City of New York also argue that the inequality issue in these proceedings pursuant to section 740 relates solely to whether the appropriate equalization rate (not its correctness) was used by the State Board as mandated by section 606, and that consequently, the only issue that could arise in that regard is what rate the State Board was required to use and what rate it did in fact use in making the special franchise assessments under review.
While the petitioner argues that the motions for partial summary judgment are premature since it maintains they are directed to the relevance of facts to be tendered as evidence on the trials, it nevertheless urges that the issues raised by the motions should be decided on the merits. All of the parties recognize that a resolution of the issues presented by these motions would be in the interest of judicial economy.
The substantial question presented for the court’s determination is whether or not petitioner may, in a proceeding to review a special franchise assessment, challenge the methodology employed by the State Board in arriving at the equalization rates for the various taxing units involved in these proceedings.
Initially, petitioner contends that the identical issue raised on these motions has already been resolved by the decision on a prior motion in these same proceedings (Matter of Consolidated Edison Co. of N. Y. v State Bd. of Equalization & Assessment, 60 AD2d 356). The court does not agree. The Appellate Division, Third Department, held that the petitions herein are sufficient insofar as they raise issues of inequality; it reversed the dismissal by Special Term of those portions of the petitions as related to those issues and reinstated the allegations. In so doing that court stated (p 360): "It should be noted that such a reversal and reinstatement of the allegations relating to inequality does not mean that this court is ñnding that such issues have any merit or that the underlying facts (an improper equalization rate) stated by way of allegation would be grounds for attacking an assessment”. (Citation omitted; emphasis mine.) The question before the Appellate Division, which it answered in the affirmative, was whether or *494 not the petitioner sought relief on the basis of inequality in its complaint before the State Board (Real Property Tax Law, § 610, subd 1) prior to commencing these proceedings, since, as the court stated, objections not raised at the administrative level may not generally be raised for the first time in the application for judicial review. Thus, in my view, the court on the prior motion decided simply that the issue of inequality had been properly raised in the proceedings, and stated in clear and unmistakable language that it was not passing upon the issue that is now raised by the instant motions. The fact that the petitioner had indicated in its brief and argument before the Appellate Division what the nature of his proof would be in order to establish inequality cannot serve to enlarge or broaden the holding of that court.
Turning to the merits of these motions, it is noted at the outset that, "Article 7 of the Real Property Tax Law is the exclusive avenue for judicial review of real property tax assessments 'unless otherwise provided by law’ (Real Property Tax Law, § 700)”, including, of course, special franchise assessments (City of Mount Vernon v State Bd. of Equalization & Assessment, 44 NY2d 960, 962). The Legislature has made it clear, however, that different standards apply for review of special franchise assessments (§ 740) than for review of assessments of ordinary real property in the traditional sense (§ 720). With respect to the latter, the local assessors are required to assess all real property in the assessing unit at full value (§ 306). Special franchise assessments, on the other hand, are made by the State Board which must first determine the full value of the special franchise property, and then apply the latest State equalization rate to it in computing the amount of the assessment, "Not withstanding the provisions of section three hundred six” (§ 606, subd 1). This statute makes clear that the 'latest” State equalization rate must be applied by the State Board except in a case where any portion of the special franchise property was on the assessment rolls for the year 1953, in which case the State equalization rate for the year 1953 must be applied. For purposes of assessment and taxation a special franchise includes the value of the tangible property located in the public areas used by the owner of the franchise in exercising its right under the authority of its special franchise. In other words, the right or privilege to use the public streets or highways, as well as the physical installations made for the purpose of such authorized *495 use, are assessed as real property for the purpose of taxation (§ 102, subd 12, par [h]; § 102, subd 17). The Legislature has specifically provided for judicial review of special franchise assessments by enacting section 740 which applies only to proceedings to review those assessments. In so providing, the statute states that a special franchise assessment may be reviewed in the manner prescribed for reviewing an assessment of real property, but only "so far as practicable”. Clearly, therefore, the Legislature recognized that the basic differences between an assessment by a local assessor of ordinary real property and a mandated special franchise assessment by the State Board would require that different standards be applied in reviewing special franchise assessments. It is noted in this regard that commencing with section 700 and continuing through section 726, the Real Property Tax Law deals with "[proceeding to review an assessment of real property”, while sections 740 through 744 deal with judicial review of special franchise assessments and are entitled "Special Provisions Relating to Special Franchise Assessments”.
The entire legislative history relating to assessments and taxation of ordinary real property in general and special franchise in particular reveals that the legislature intended to create a separate and distinct system or process, not only for the purpose of establishing equalized valuations for special franchise properties but also a different method of judicial review for such properties. Special franchises were a new kind of property and the problem was to place a just and adequate valuation upon it for the purposes of taxation. This new kind of property was termed real property by the Legislature, "just as it might have been termed personal property, or neutral property, without changing its nature, which was such as local assessors had never dealt with * * * [pjroperty unknown as the subject of taxation to the framers of any of our Constitutions was brought into the system, which required new methods of valuation and the exercise of functions which had never belonged to local assessors. The property was sui generis, and from its nature could not be valued by local officers.” (People ex rel. Metropolitan St. Ry. Co. v State Bd. of Tax Comrs., 174 NY 417, 438-439). Consequently, the authority to assess special franchise properties was vested in the State Board of Tax Commissioners as far back as 1899 (L 1899, ch 712). Any question of equalization of special franchise assessments could *496 be raised only in a certiorari proceeding. Over a period of years dating back to 1911 the Legislature developed a process of administrative equalization solely for the purposes of special franchise assessments. In so doing, it removed the review of special franchise assessments from then section 293 of the Tax Law to a new section 293-a (L 1916, ch 323), the former governing review of ordinary assessments and the latter special franchise assessments. Most significantly, in 1953 the Legislature enacted a new section 45 and amended section 45-a of the Tax Law (L 1953, ch 874). Section 45, now section 606 of the Real Property Tax Law, directed the State Board to apply the 1953 State equalization rate to that portion of the special franchise which was assessed in 1953 and to apply the latest State equalization rate to all other special franchise property. In amending section 45-a of the Tax Law, the subject matter of which is now found in sections 608, 610 and 612 of the Real Property Tax Law, the Legislature deleted all references to the rate of equalization, including notice of and hearings previously required on any complaint concerning the rate of equalization. The deletion or omission of this matter evidences, in my view, a recognition on the part of the Legislature that the correctness of the rate utilized by the State Board in arriving at the assessed valuation of special franchise properties should not be subject to challenge by the owner of such special franchise.
Article 12 of the Real Property Tax Law, which provides for the establishment of the equalization rate by the State Board, requires that notice be given to a taxing unit of the determination of a tentative equalization rate, and the taxing unit is afforded an opportunity to file a complaint objecting to the tentative equalization rate. The taxing unit is then entitled to an administrative hearing on its objections before a final equalization rate is established for that particular municipality. The only recourse thereafter available to the taxing unit is by way of a proceeding brought pursuant to CPLR article 78 in which judicial review of the State Board’s final determination of the equalization rate may be had (§ 760). A municipality may not otherwise seek judicial review of a special franchise assessment as fixed by the State Board (City of Mount Vernon v State Bd. of Equalization & Assessment, 44 NY2d 960, supra). The owner of special franchise property may file a complaint and is entitled to a hearing thereon before the State Board, but only with respect to the tentative assessment *497 of his special franchise (§§ 608, 610, 612). He may also seek judicial review of the final assessment as fixed by the State Board (§ 740). In such a proceeding for judicial review, however, neither article 7 nor any other provision of law accords the owner of a special franchise any right or authority to attempt to establish a different equalization rate than that arrived at by the State Board.
In contending as a basis of its claim of inequality that its special franchises were assessed at a higher proportionate valuation than the assessments of all other real property in the taxing unit, petitioner seeks by these proceedings to establish an equalization rate derived from all of the current arm’s length sales in the taxing unit. Petitioner’s reliance on Matter of Standard Brands v Walsh (92 Misc 2d 903, affd 60 AD2d 605, mot for lv to app den 43 NY2d 649) in support of this position is misplaced. In Standard Brands the court had under review the traditional assessment of ordinary real property in a proceeding brought pursuant to section 720. In such proceedings the State equalization rate is but one of the alternate evidentiary devices that may be utilized by a property owner on the question of inequality, as provided in subdivision 3 of section 720. When the equalization rate is used for that purpose it is also subject to impeachment (Guth Realty v Gingold, 34 NY2d 440). Such is not the case with respect to special franchise assessments where the equalization rate is not an evidentiary matter, but the standard which must be utilized by the State Board which has no authority to arrive at the assessment by any other means (§ 606). The court is not persuaded that a challenge to the State equalization rate is permissible under the authority of Matter of Staten Is. Edison Corp. v Moore (6 Misc 2d 1031, revd 6 AD2d 369, retried 37 Misc 2d 198, affd 15 AD2d 983, affd 12 NY2d 846), as urged by petitioner. The assessment before the court in Matter of Staten Is. Edison Corp. and the proceeding to review it were made and commenced pursuant to the provisions of the Tax Law in effect prior to 1953 when the State equalization rates were not based on scientific studies and were considerably out of date, and at a time when special franchise owners still had the right to object to a proposed equalization rate as well as the right to be heard on their objections. We are dealing here with a State equalization rate which is "objectively arrived at” and which "today is expertly arrived at” (Guth Realty v Gingold, 34 NY2d 440, 450, supra; see, also, 860 Executive *498 Towers v Board of Assessors of County of Nassau, 53 AD2d 463, 472), and its use is now mandated in determining special franchise assessments. In the Matter of Town of Huntington v State Bd. of Equalization & Assessment (53 AD2d 6), the State equalization rate was not only challenged successfully but changed by the court. However, the proceeding before the court there was brought by the taxing unit pursuant to CPLR article 78 as prescribed by section 760, and was not a proceeding to review an assessment of real property. Furthermore, as the court at Special Term pointed out in Matter of Town of Huntington, "in this proceeding petitioner does not contest the State Board’s sampling methodology nor its valuation formulae” in arriving at the rate (81 Misc 2d 457, 461). In Bloom v Mayor of City of N Y. 35 AD2d 92, affd 28 NY2d 952), also cited by petitioner, it was held that a taxpayer could challenge an equalization rate computed pursuant to article 12-A of the Real Property Tax Law. Since the court in that case was considering special equalization ratios for computing constitutional tax and debt limitations, it can have no application to the equalization rate established under article 12 with which we are concerned here.
The court has examined petitioner’s argument that an interpretation of section 606 in the manner urged by the movants would be constitutionally impermissible as a denial of equal protection of the laws. In my opinion this constitutional issue as advanced by the petitioner is insubstantial and does not require extended discussion (see Kentucky R. R. Tax Cases, 115 US 321; Rapid Tr. Corp. v New York, 303 US 573; Southern Ry. Co. v Watts, 260 US 519).
The court concludes as a matter of law that, in determining the assessments of petitioner’s special franchise properties the respondent State Board could not apply any equalization rate but the rate established by it pursuant to article 12, and, further, that in seeking judicial review of such assessments, the method by which the State Board arrived at that equalization rate may not be called into question. To hold otherwise would result only in creating a chaotic situation with respect to the manner in which the rate should have been arrived at in a particular special franchise assessment under review. Instead of the same rate being applied in a given tax year, several different rates would be used as a result of different judicial opinions. It is clear that the Legislature could not have intended such a result, especially when we consider that *499 it has established standards which it requires the State Board to use in arriving at equalized valuations or assessments of special franchises.
While the conclusion reached by this court leaves the equalization rate established by the State Board effectively immune to attack by the owner of a special franchise for incorrectness or inaccuracy, however great, the potential for abuse is no greater than that which resulted from a similar conclusion arrived at in City of Mount Vernon v State Bd. of Equalization & Assessment (44 NY2d 960, supra). It was there held that the State Board’s assessment of a special franchise is immune to attack by a municipality. It was also held (p 963), and this court so holds, that if, in justice, there is a need to eliminate this potential for abuse, the remedy is with the Legislature.
Accordingly, the motions for partial summary judgment are granted.

 All statutory references hereinafter made, unless otherwise specified, are to the Real Property Tax Law.