█ MICHELANGELO SCIMECA, Respondent, v. NEW YORK CITY TRANSIT AUTHORITY, Appellant.— In a negligence action to recover damages for personal injuries, defendant appeals from a judgment of the Supreme Court, Kings County, entered June 26, 1972, in favor of plaintiff, upon successive jury verdicts, after separate trials upon the issues of liability and damages. Judgment reversed, on the law and the facts, and complaint dismissed, on the law, with costs. Upon a previous appeal in this action, following a previous trial, we reversed the dismissal of the complaint at the end of plaintiff's case and granted a new trial, stating that at the new trial plaintiff shall be permitted to produce an expert to establish a case under the doctrine of *res ipsa loquitur* (*Sciemeca* v. *New York City Tr. Auth.,* 39 A D 2d 596). We stated (pp. 596–597) : " We are of the opinion that while, in order for plaintiff at bar to have brought himself within the purview of the doctrine of *res ipsa loquitur,* proof of exclusive possession and control was a necessary prerequisite, all that he was required to establish was that under the facts and circumstances adduced and from the nature of defendant's possession and control ' the probability that the negligent act was caused by someone other than the defendant is so remote that it is fair to permit an inference that the defendant is the negligent party '." At the second trial, now under review, plaintiff produced expert testimony which indicated that the piece of steel was a leaf spring from a type of train which testimony by defendant indicated had not run over the tracks in question at or near the time of the accident. Further, defendant produced testimony which indicated that the two types of trains which ran over the elevated tracks at or near the time in question had much different springs and thus the injury producing item could not have come from them. Defendant also produced testimony which indicated that the object involved was from an automotive truck and that there were numerous buildings abutting and higher than the tracks and that it was thus possible for someone to have thrown objects onto the tracks. In light of the above, we are of the opinion that plaintiff failed to sustain his burden of proof which burden we explained in our first decision (see *Sandler* v. *Garrison,* 249 N. Y. 236). Latham, Brennan and Benjamin, JJ., concur; Martuscello, Acting P. J., concurs in the reversal of the judgment, but otherwise dissents and votes to grant a new trial, with the following memorandum: The trial court erred as a matter of law when it allowed, over defendant's objection, plaintiff's witness, a history professor, to testify as an expert that the leaf spring which allegedly caused plaintiff's injury was an object from an elliptical spring of a New York City Rapid Transit subway car. The *voir dire* examination as to the qualifications of this witness in my opinion revealed that he lacked the background which would qualify him as an expert for this purpose. Gulotta, J., dissents and votes to affirm the judgment, with the following memorandum: On December 27, 1967 at about 7:00 A.M., while driving his automobile along Broadway near Ralph Avenue, in Brooklyn, underneath the elevated railroad structure operated by defendant, plaintiff was injured when a large piece of steel in the shape of a

leaf spring dropped from the tracks as a train passed overhead, crashed through the windshield of his car and hit him in the face. He actually saw the piece of steel drop straight down from underneath the train, but he was unable to avoid it. The testimony as to the origin of the broken leaf spring was conflicting. Plaintiff's expert testified that it was a leaf from an elliptical spring used on electric railway car trucks of the New York City Rapid Transit type, that the bevel end was typical of the A. C. F. pedestal type truck used on New York City subway trains beginning about 1929 and running from type R1 through R9. Confining itself to the hours from 6:00 A.M. to 8:00 A.M. on December 27 for reasons which are not clear, defendant showed that only cars of the 8000 and 2000 series ran on these tracks — that the former have coil springs and the latter have leaf springs, but with a butted end rather than the chamfered end of the spring which did the damage. A Transit Authority expert testified that the spring produced by plaintiff *could have come* from a Dodge or a White or a Diamond T automobile truck in just those words without specifics of any kind. The jury was entitled to give such indecisive testimony little weight. It was also testified that the B. M. T. has approximately 1,400 cars and the I. R. T. a greater but unspecified number. The R1 to R9 types adverted to by plaintiff's expert are in the I. R. T. inventory, but the Authority witness was unable to rule out their use in the B. M. T. system at times, or on a regular basis in the work trains which regularly ran on B. M. T. tracks. Thus, both types of trains ran over those tracks at one time or another. Since, for the purpose of applying the doctrine of *res ipsa loquitur,* it makes no difference whether this broken spring came from a train which ran that morning or from a previous train which ran on another day and that the spring was merely dislodged by the train which passed over plaintiff's head, the jury was more than justified in resolving the dispute in plaintiff's favor and in concluding that the spring in fact had come from one of defendant's trains. On the showing made by plaintiff, it was incumbent on defendant, which was peculiarly well situated to do so, to supply the detailed proof which would exonerate it. This it failed to do and it is justifiable to conclude that the details would not have assisted the Authority's defense. As to the possibility that the spring may have been tossed on the tracks from a nearby building, there was divergent testimony as to the height of the buildings and as to whether this would be physically possible. There are two very significant pictures in the record. Defendant's exhibit "D", taken from a distance down the tracks, would make it appear to be quite possible, since the buildings appear to overhang the railroad tracks due to the foreshortening effect produced by the distance at which the picture was taken. However, since the witness used an arrow to mark both the corners of Green Avenue and Broadway and Ralph Avenue and Broadway, it is impossible to orient exhibit "D" to the accident, but it is obvious that the building marked with the short arrow considerably exceeds the height of the corner building shown on defendant's exhibit "B" with a street sign in the picture identifying that as Ralph Avenue. Furthermore, defendant's exhibit "B", taken from the street and showing this building on the corner of Ralph Avenue and Broadway, would make it appear highly unlikely, due to the minimal height of the building, which barely tops the railroad tracks, and the distance to the tracks — an estimated 40 feet or more from the roof of the building. As I pointed out in my previous concurring. opinion in this case, it is not necessary that plaintiff absolutely exclude all agencies other than defendant to invoke the *res ipsa loquitur* principle. It is enough that the probability that the negligent act was caused by someone other than defendant is so remote that it is fair to permit an inference that defendant

is the negligent party (*Cameron* v. *Bohack Co.*, 27 A D 2d 362). Here the jury drew that inference and I do not think its verdict should be disturbed.