OPINION OF THE COURT
Thomas J. Lowery, Jr., J.
This timely filed claim seeks damages for personal injuries sustained by the claimant, Elizabeth J. Salathiel, as a result of the negligent insertion of a nasogastric tube through the claimant’s nose. The claim is founded upon specific acts of negligence and, in addition, the claimant relies on the doctrine of res ipsa loquitur to establish liability on the part of the State.
On November 18, 1975, the claimant was admitted to the Upstate Medical Center Hospital, a State facility, to participate, as a volunteer, in a bile study program. When the attending doctor attempted to insert a nasogastric tube, with a mercury bag attached, into the claimant’s right nostril, he experienced some difficulty. To facilitate the passage of the tube, he pushed and jabbed a four to five-inch cotton-tipped probe up the claimant’s right nostril. This attempt was aborted when the mercury bag broke. Thereafter, a tube was successfully passed through claimant’s left nostril, where it remained for two days, during which period bile was collected.
*74 Immediately, upon leaving the hospital, the claimant noted a watery fluid flowing from her nose. When this condition persisted, and upon the advice of the hospital, a sample of the fluid was tested, and the claimant was advised that it was possible that the discharge was cerebrospinal fluid.
Thereafter, the claimant was referred to a neurosurgeon, who conducted further tests. These confirmed that the discharge was cerebrospinal fluid, and eliminated all pathological causes for the condition. The neurosurgeon postulated that the source of the discharge was a hole in the cribriform plate area and concluded that surgery was necessary. Subsequent surgery corrected the leak; however, the same necessitated the severing of the olfactory nerve.
It is alleged that, as a reult of the occurrences described herein, the claimant has been caused to undergo severe physical pain and mental anguish. As a result of the corrective surgery, she has permanently lost her sense of smell and the associated sense of taste. Moreover, as a result thereof, there exists a permanent scar on her right thigh, where tissue used to patch the leak was obtained, and across her forehead above the hairline. She claims to suffer headaches to the present date. No claim for special damages is made herein.
In support of her claim, the claimant relies, in part, on the testimony of the neurosurgeon who performed the corrective surgery. He opined that the injury to the cribriform plate area was caused by the intubation procedure. Further, he opined that it was specifically the use of the probe that caused the injury and that such use was not in conformity with accepted medical standards in the community.
It is urged that the court reconsider its denial of the State’s motion to strike the opinion evidence of the medical expert, since the same was based on an out-of-court statement made by the physician in charge of the bile study program, who was not called to testify herein.
The record discloses that the hearsay statements were communicated to the medical expert in his capacity as the treating doctor during his investigation into the history of the case. Since the doctor had no previous knowledge of a similar injury ever resulting from an intubation, he relied on the hearsay statements to overcome his initial skepticism. Statements made by a supervising physician would be material of the kind accepted by a doctor as reliable in forming his *75 professional opinion. Under the circumstances, the opinion of this expert should not be rejected solely on the basis that his opinion is founded, in part, on such hearsay statements. (See People v Sugden, 35 NY2d 453.) This is- especially true where the expert’s opinion is based upon an overwhelming residuum of legally competent evidence.
In addition, the claimant relies on the doctrine of res ipsa loquitur to establish a prima facie case. This doctrine does not state a separate theory upon which a claimant may recover for injuries, but amounts to nothing more than a species of circumstantial evidence. (McKenna v Allied Chem. & Dye Corp., 8 AD2d 463.) It requires evidence which shows, at least probably, that a particular accident could not have occurred without legal wrong by the defendant. (Abbott v Page Airways, 23 NY2d 502.) Facts which are probatively relevant to an issue are generally admissible as circumstantial evidence and may be as good a basis for proof as direct evidence. (See 2 Benders NY Evidence, ch 5, §§46, 48.) It is not necessary to elect between the use of the doctrine and proof of specific acts of negligence. (Abbott v Page Airways, supra.)
The rationale for the doctrine of res ipsa loquitur is that the occurrence in question, itself, contains a sufficient basis for the inference of negligence and causation. (George Foltis, Inc. v City of New York, 287 NY 108.) This necessarily implies that the circumstances of the occurrence can be reasonably appraised by the common knowledge or experience of an ordinary layman. (Pipers v Rosenow, 39 AD2d 240; George v City of New York, 22 AD2d 70, affd 17 NY2d 561.) In some instances, additional evidence may be necessary to provide sufficient explanation in order to allow a layman to reach a conclusion based upon his common knowledge. (Restatement, Torts 2d, § 328 D, Comment d, p 158, as cited in Fogal v Genesee Hosp., 41 AD2d 468, 475; see, also, Scimeca v New York City Tr. Auth., 34 NY2d 613, revg 42 AD2d 745.) Such evidence was provided here by the medical expert and the claimant.
The claimant’s expert, who was also the treating physician, testified as to the nature of her injury and that such injury was remote from the site of an intubation procedure. His testimony evinced that the injury sustained would not be considered an ordinary risk of the procedure. Moreover, he testified that a probe of the kind used here was capable of *76 inflicting the injury sustained, and that tests performed on the claimant eliminated all pathological causes for the injury.
The claimant’s testimony established that, prior to the intubation, she was in good health. During the procedure, she was exclusively under the control of hospital personnel. Further, the attending doctor had difficulty, as described, in passing the tube. Finally, immediately upon discharge from the hospital, she observed a fluid, later discovered to be cerebrospinal fluid, flowing from her nose.
This evidence clearly and reasonably excludes any explanation for the injury sustained by the claimant, other than the negligence of the defendant. This inference of negligence stands unrebutted. The doctor who performed the procedure, although called as a witness, offered no explanation or justification for the occurrence of the injury.
From the totality of the evidence, the court is logically compelled to conclude that the intubation procedure was negligently performed and that such negligence was the proximate cause of the injuries and damage sustained by the claimant, as alleged.
In accordance with the foregoing, the claimant is awarded the sum of $70,000 for her personal injuries and her conscious pain and suffering caused by the negligence of the defendant.