In the Matter of Consolidated Edison Company of New York, Inc., Appellant, v State Board of Equalization and Assessment, Respondent, and Village of Pleasantville et al., Intervenors-Respondents.

Third Department, February 21, 1980

### APPEARANCES OF COUNSEL

*Ernest J. Williams (Wien, Lane & Malkin [Martin B. Cowan] of counsel), for appellant.*

*Robert Abrams, Attorney-General (Vernon Stuart, Jeremiah Jochnowitz and Shirley Adelson Siegel of counsel), for respondent.*

*Allen G. Schwartz, Corporation Counsel (John P. MacArthur of counsel), for City of New York, intervenor-respondent.*

*Whiteman, Osterman & Hanna (Melvin H. Osterman, Jr., of counsel), for Westchester Municipalities, intervenor-respondent.*

### OPINION OF THE COURT

MAHONEY, P. J.

The sole issue presented for our determination is whether, in a proceeding to review the assessment of a special franchise, the owner thereof may contest that assessment on the basis of inequality.

Petitioner is a public utility and the owner of numerous special franchises in the City of New York and the Counties of Westchester and Rockland. The State Board of Equalization and Assessment (SBEA) is vested with the exclusive authority to determine the assessed valuation of all special franchise property located in this State (Real Property Tax Law, § 600). Alleging that its special franchise assessments for the tax years 1974 through 1978 have been unequal, overvalued and illegal, petitioner commenced 168 proceedings against the SBEA involving 44 different taxing units, many of which have been allowed to intervene. Following consolidation of the proceedings, the SBEA and various intervenors moved for partial summary judgment dismissing those portions of the petitions which sought to establish inequality by proof of current sales in each of the taxing units. Noting that such proof would be admissible in the normal proceeding to review a real property assessment pursuant to subdivision 3 of section 720 of the Real Property Tax Law, Special Term granted the requested relief and held that the Legislature had formu-

lated different review procedures for special franchise assessments to which section 720 was not applicable. This appeal by the petitioner ensued.

This is not the first time this proceeding has come before this court. In *Matter of Consolidated Edison Co. of N. Y. v State Bd. of Equalization & Assessment* (60 AD2d 356), we held that petitioner sought relief on the basis of inequality in its complaint before the SBEA and thus was not precluded from seeking judicial review of that issue due to a failure to first seek administrative redress. We expressly refrained, however, from determining whether petitioner's claim of inequality (1) had any merit or (2) was a proper ground for judicially attacking a special franchise assessment (60 AD2d 356, 360). It is this second issue which is now before us on this appeal.

An understanding of the history of special franchise assessments is necessary for resolution of this issue. The State Board of Tax Commissioners was first authorized in 1899 to assess special franchises (L 1899, ch 712). Assessments were to be made at full value, with no provision for equalization. Since local authorities rarely, if ever, assessed real property at full value,[1] special franchise owners were required to bring certiorari proceedings in order to have their assessments equalized (see, e.g., *People ex rel. New York Cent. & Hudson Riv. R. R. Co. v Priest,* 206 NY 274; *People ex rel. Hudson & Manhattan R. R. Co. v State Bd. of Tax Comrs.,* 203 NY 119; *People ex rel. Jamaica Water Supply Co. v State Bd. of Tax Comrs.,* 196 NY 39). A flood of litigation resulted and, in 1911, the Legislature empowered the State Board of Tax Commissioners to equalize special franchise assessments through the application of rates devised by the board (L 1911, ch 804). These rates were used solely for the purpose of equalizing special franchise assessments, and special franchise owners were given notice of both the full and equalized value of their property with an opportunity for separate hearings on each. Following the replacement of the State Board of Tax Commissioners with the State Tax Commission in 1915, the Legislature provided, in 1916, for a single hearing on the questions of full valuation and the rate of equalization (L 1916, ch 334).

---

1. Section 306 of the Real Property Tax Law, which requires that real property be assessed at full value, has a lineage that dates back to 1788 (see *Matter of Hellerstein v Assessor of Town of Islip,* 37 NY2d 1, 3-4). The State Constitutional prohibition of assessments in excess of full value (NY Const, art XVI, § 2) was not adopted until 1938.

Thereafter, in 1949, the task of assessing special franchises was assigned to a temporary commission known as the SBEA.[2] This commission was also assigned the duty of reviewing and revising the State equalization rates although, at that time, these rates were not applied to special franchises for the purpose of equalization. It was not until 1953 that the Legislature, recognizing the work done by the temporary SBEA in revising the State equalization rates, directed that special franchises be assessed by applying the "latest state equalization rate" to the property's full value (L 1953, ch 874). Prior to this, special franchise owners, who had been afforded an administrative hearing on the issues of the full and equalized value of their property since 1911, were entitled to raise the issue of inequality upon judicial review (see, e.g., *Matter of Staten Is. Edison Corp. v Moore*, 6 AD2d 369, 376-377). It is important to note, however, that the amendments made in 1953 to the section dealing with a special franchise owner's administrative hearing contained some significant changes in language. Instead of being furnished with a hearing after receiving notice of the "full and actual valuation of a special franchise and the rate of equalization thereof", special franchise owners were given a hearing only after receiving notice of their property's "valuation" (L 1953, ch 874, § 4).

■ Since a special franchise assessment is computed by applying some equalization rate to the value of the property, it is argued that the purpose behind giving special franchise owners notice only of their property's "valuation" was to prohibit them from challenging the equalization rate used. We need not, however, decide whether this omission of prior language evidenced a new legislative intent to restrict those issues upon which owners of special franchises could obtain administrative review, for in 1958 the Legislature adopted further amendments which mandated the SBEA to afford special franchise owners a hearing on the "tentative assessment" of their property (L 1958, ch 959). This language can today be found in section 608 of the Real Property Tax Law. Since the tentative assessment is determined by applying the latest State equalization rate to the full valuation of the special franchise, it seems clear that any review of the assessment must a fortiori bring up for review the two component

2. The SBEA did not become a permanent body within the Executive Department until 1960 (L. 1960, ch 335).

parts necessary for its calculation (i.e., the property's full value and the equalization rate applied).

■ ■ Having decided that the equalization aspect of a special franchise assessment is properly the subject of a hearing before the SBEA under section 608 of the Real Property Tax Law, we now turn our attention to the scope of judicial review provided. Article 7 of the Real Property Tax Law comprises the exclusive avenue for judicial review of real property tax assessments (see *Matter of Dudley v Kerwick,* 72 AD2d 224). The article itself is comprised of three separate titles. The first (§§ 700-726) is entitled "General Provisions" and sets forth the procedures to be followed in seeking judicial review of an assessment. Title 2 (§§ 740-744) is called "Special Provisions Relating to Special Franchise Assessments", while title 3 (§ 760) contains a miscellaneous provision allowing municipalities to challenge the State equalization rates established by the SBEA.

Section 706 states that illegality, overvaluation and inequality are the permissible grounds upon which a proceeding may be brought, while subdivision 3 of section 720 limits the type of evidence which may be received on the issue of inequality. Petitioner's argument, simply stated, is that these provisions of title 1 apply with equal force and effect to proceedings to review special franchise assessments since they do not conflict with any express provision within title 2 and thus comply with the command of subdivision 1 of section 740 that special franchise assessments be reviewed in the same manner as ordinary real property assessments "so far as practicable". The respondent argues that the previously mentioned sections of title 1 are pre-empted by title 2 and thus inapplicable to special franchise assessment review. Since the SBEA has been statutorily directed to apply the "latest state equalization rate" in computing special franchise assessments (Real Property Tax Law, § 606, subd 1), a situation unlike that found in assessing ordinary real property, respondent contends that petitioner is limited in an article 7 proceeding to challenging whether the latest State equalization rate was in fact used and may not attempt to show that use of said rate produced an unequal assessment.

■ We cannot agree with the arguments advanced by respondent, and accepted by Special Term, that it was the Legislature's intent to foreclose special franchise owners from attempting to prove the inequality of their assessments. Such

a result, in addition to being inconsistent with past judicial efforts to preserve review by the courts of administrative determinations despite unambiguous statutory language to the contrary *(Matter of Board of Educ. v Allen,* 6 NY2d 127, 136), violates the spirit of subdivision 2 of section 616 of the Real Property Tax Law which purports to treat special franchise assessments "as if such assessment had been originally made by such [local] assessors."

Moreover, respondent's position is premised upon the notion that the State equalization rates developed each year by the SBEA are of such accuracy that judicial review of them is unwarranted. Such is not the case. It was not until 1961 that the applicable State equalization rate was even allowed to be put into evidence on the issue of inequality in an assessment review proceeding (Real Property Tax Law, § 720, subd 3, as amd by L 1961, ch 942, § 1). In an inequality trial, the search is to determine at what percentage of full value the local assessors have been assessing the taxable real property within a given taxing unit. Theoretically, that percentage should equal the State equalization rate computed pursuant to subdivision 1 of section 1202 of the Real Property Tax Law. Yet, the Legislature, in permitting the State equalization rate to be introduced as evidence of the percentage that assessed valuation bears to full valuation, did not make the State rate conclusive of that fact. Instead, it became one of three methods for proving that percentage.[3] Finally, by recent amendment made after the order of Special Term in this case was entered, the Legislature deleted that portion of section 720 which allowed introduction into evidence of the State equalization rate (L 1979, ch 126, § 2). The legislative findings which accompanied this legislation acknowledged that use of the State equalization rate in inequality proceedings had often led to undesirable and unintended results, and proclaimed that: "The legislature further finds that the reason such equalization rate is inappropriate and invalid is that the equalization rate established for the roll was never intended to determine property values for taxing purposes, but was intended only to be used in connection with equalizing state aid and to compute constitutional tax and debt limits. Therefore, the use of such equalization rate for the purpose of quantifying the ratio

---

**3.** The other methods involve (1) sample parcels and (2) actual sales within the assessing unit during the year in which the assessment under review was made (Real Property Tax Law, § 720, subd 3).

of assessment to market value within a taxing district produces spurious and counter-productive results." (L 1979, ch 126, § 1.)

In the face of this most recent pronouncement of legislative dissatisfaction with the applicability of State equalization rates to the issue of assessment inequality, it is difficult for us to believe that the Legislature desired to remove that issue from judicial scrutiny due to their faith in the accuracy of the State rates.

Rather, it seems much more logical for us to assume that the Legislature was cognizant of the inherent problems created by a system in which the SBEA assesses special franchises without knowledge of the local assessing practices, and directed use of the "latest state equalization rate" as a starting point for removing inequality between individual assessments. It was obvious that different taxing units did not assess property at the same percentage of full value. Some equalization rate had to be applied to remove inequality. Since the body empowered to determine special franchise assessments (the SBEA) was also developing the State equalization rates, it was only natural that these rates be used. However reasonable that conclusion may be, it does not compel the inference that by directing the SBEA to use the latest State equalization rates in assessing special franchises, the Legislature intended to treat the owners thereof differently from other real property owners seeking to challenge the inequality of their particular assessments. Thus, we conclude that the provisions of subdivision 3 of section 720 of the Real Property Tax Law relative to the trial on the issue of inequality apply with equal force and effect to review of a real property assessment and a special franchise assessment (see Lee and Le Forestier, Review and Reduction of Real Property Assessments in New York [2d ed], § 8.22).

Our holding in this case will insure that special franchise owners have a meaningful opportunity to challenge the State equalization rates used in computing their assessments. Only municipalities are given notice of the SBEA's tentative State equalization rates and afforded a hearing thereon (Real Property Tax Law, §§ 1204-1208). Indeed, the fact that section 760 of the Real Property Tax Law allows municipalities article 78 review of the final State equalization rates dispels any notion that these rates should be beyond judicial examination.

One final point should be addressed. In holding that special

franchise owners not be permitted to challenge their assessments on the basis of inequality, Special Term expressed the fear that a conflicting morass of judicially determined rates might develop if challenges were allowed on that basis. Such a fear appears unfounded. Special franchise owners seeking judicial review of their assessments must petition for review within 60 days after being served with a final assessment notice (Real Property Tax Law, § 740, subd 1) and all proceedings timely commenced may be consolidated (Real Property Tax Law, § 710). Indeed, the present consolidated proceeding is the best evidence of the salutary effect of section 710.

Accordingly, the order of Special Term granting the motions for partial summary judgment should be reversed, on the law, and the motion denied, with costs.

GREENBLOTT, J. (dissenting). I dissent and vote to affirm for the reasons stated by Mr. Justice KOREMAN at Special Term.

SWEENEY, STALEY, JR., and MIKOLL, JJ., concur with MAHONEY, P. J.; GREENBLOTT, J., dissents and votes to affirm in a separate opinion.

Order reversed, on the law, and motion denied, with costs.