*423 OPINION OF THE COURT
Thomas J. Lowery, Jr., J.
In these consolidated proceedings brought pursuant to article 7 of the Real Property Tax Law, the petitioner, Consolidated Edison Company of New York, Inc. (Con Ed), seeks an order pursuant to CPLR 408 granting it leave to conduct pretrial discovery.
The petitioner is a public utility and is the holder of special franchises in the City of New York and the Counties of Westchester and Rockland. Maintaining that its special franchise assessment for the tax years 1974-1978 had been unequal, overvalued, and illegal,[1] it commenced 168 proceedings against the State Board of Equalization and Assessment (SBEA).[2]
The subject motion seeks to compel disclosure of matters allegedly relevant to both the issue of inequality and illegality. Whether the matters sought to be disclosed are material and necessary[3] and, hence, discoverable, depends upon the nature of this proceeding. Although a proceeding brought pursuant to article 7 of the Real Property Tax Law has often been called a review, it is actually not a review at all. Rather, it is a trial de novo to determine whether the assessment of the property is correct, and if not, to correct it. (Matter of Katz Buffalo Realty v Anderson, 25 AD2d 809.) In this regard, the concern is with the assessment imposed and not the manner in which the assessment was determined. What the assessor did or failed to do is irrelevant. (National Fuel Gas Distr. Corp. v State Bd. of Equalization & Assessment, 86 AD2d 707; Matter of Metropolitan *424 Life Ins. Co. v Tax Comm, of City of N. Y., 22 AD2d 870, affd 16 NY2d 935.)[4]
Where the issue is inequality, the search is to determine whether the subject property is assessed at a higher proportionate value than other properties in the taxing unit. To do so, Con Ed must introduce competent evidence from which the appropriate equalization rate may be derived. Such evidence is limited by statute to three methods of proof: the select parcel method; the actual sales method; and the State equalization rate established for the roll containing the assessment under review. (Real Property Tax Law, § 720, subd 3.) It should be noted, however, that only the first two methods are applicable in Nassau County and the City of New York. (Matter of Colt Inds. v Finance Administrator of City of N. Y., 54 NY2d 533.)
It is apparent from the foregoing that sales data in the possession of the SBEA and the intervenors-respondents should be disclosed. Such data is relevant in that it could be used to prove inequality by the actual sales method. Moreover, such disclosure would not be unduly burdensome. This is evidenced by the fact that computer tapes containing sales information for all years except 1978 have already been turned over to Con Ed. The fact that the information may be gleaned from other sources is not alone reason for denying the disclosure. (See 3A Weinstein-Korn-Miller, NY Civ Prac, par 3101.09.) In addition, it is not material prepared for litigation, since it is required to be kept by the assessors of certain municipalities (Real Property Tax Law, § 574) and is utilized by the SBEA in determining the State equalization rate pursuant to article 12 of the Real Property Tax Law. Finally, its disclosure is not foreclosed by section 1146-15.0 of the Administrative Code of the City of New York, despite the fact that the data may be derived, in part, from real property transfer tax returns. Any privilege accorded by the code is a qualified
*425 one.[5] Thus, its application is dependent upon a balancing test, whereby the interest sought to be protected, here the privacy of the taxpayer, is weighed against the need of the party seeking the information. (See Cirale v 80 Pine St. Corp., 35 NY2d 113; Leefv Evers, 81 Misc 2d 518, revd on other grounds 88 Misc 2d 178.) Applying this test, there would be no reason to extend the privilege beyond the tax return itself.[6] For the information contained therein, relating to the transfer of the real property, may be obtained from other public records. Moreover, there is now specific statutory authority for the release of all sales data for those seeking to review their assessment. (Real Property Tax Law, § 574, subd 5.) This statute alone would exempt the sales data from any claim of privilege.
For the same reasons, all records relating to the verification of the sales data, except for the real property tax returns themselves, should be disclosed. Moreover, inquiry should be permitted into the use to which the verifications are put. With respect to any objection that has been raised to the relevancy of such data, the court would note that the verification may be such as to be relied upon by an expert attesting to the validity of a particular sale. (See People v Sugden, 35 NY2d 453; Salathiel v State of New York, 96 Misc 2d 72.) In addition, the verified data may have been used in such a way as to constitute an admission that the particular sale was an arm’s length transaction. (See Reed v McCord, 160 NY 330.)
With respect to the disclosure of matters that relate to the State equalization rate for the assessment roll under review, the data base and procedures that were employed in arriving at the rate are relevant. Such information would assist the petitioner in establishing a foundation for *426 the receipt of the rate into evidence and would enable it to impeach the rate if the respondent should rely upon it.[7] (Guth Realty v Gingold, 34 NY2d 440; Matter of Standard Brands v Walsh, 92 Misc 2d 903, affd 60 AD2d 605.)
Parenthetically, it is noted that the State equalization rate used to prove inequality should not be confused with the State equalization rate used to reach the assessment of the property in the first instance. For there are two rates involved. The one used as an evidentiary standard under subdivision 3 of section 720 of the Real Property Tax Law is the rate that is determined for the assessment roll under review. This, however, is not the same rate as the rate used to determine the assessment of the property pursuant to section 606 of the Real Property Tax Law. In the case of special franchise properties, the assessment is determined before the completion of the roll (see Real Property Tax Law, § 616, subd 2); hence, it is obvious that the rate used in determining the special franchise assessment is not the same rate that was determined from the roll containing the assessment under review subsequent to its completion. (See Real Property Tax Law, § 1202, subd 1.)
Finally, to allow an inquiry into the SBEA’s methodology in determining the equalization rate for the assessment roll under review is not inconsistent with the principle that the mental processes and formulae of the assessors are irrelevant. First, as stated, this rate is not the same as the rate used to assess the property. Moreover, even if it were, the determination of an equalization rate is not, per se, an assessment function. (See Real Property Tax Law, arts 12, 12-A.) Simply put, the State equalization rates are not made for the sole purpose of assessing special franchise properties, but are only incidentally utilized to arrive at the assessment subsequent to the formulation of the rate. If we were to hold that the formulation of the State equalization rate was an assessment function, the legislative scheme in allowing its use as an evidentiary standard would be rendered an absurdity.
Finally, with respect to inquiry into matters that may constitute admissions as to ratio, such disclosure should not be permitted here. Although such inquiry was allowed *427 in Blooming Grove Props, v Board of Assessors of Town of Blooming Grove (34 AD2d 953), the inquiry there was substantially similar to a demand for an admission of the rate that is made pursuant to section 716 of the Real Property Tax Law. The latter section specifically exempts from its application special franchise assessments. Hence, the court has no reason to deviate from the express limitations on the permissible evidence provided for in subdivision 3 of section 720 of the Real Property Tax Law.[8]
Turning now to the issue of illegality, the petitioner is entitled to disclosure of the equalization rate that was used to determine the assessment of the property for each tax year in question. This is relevant in that such evidence could be used to establish that section 606 of the Real Property Tax Law was violated, thereby demonstrating that the property was not assessed in a manner authorized by law. (See, generally, 24 Carmody-Wait 2d, § 146.1 et seq.) Any inquiry with respect to the formulation of the rate is irrelevant. For the court is not concerned with the means by which such assessment was made, but only with the result. While an inaccurate result may be considered illegal, this is more properly addressed as an issue of inequality or overvaluation. (Cf. City of Mount Vernon v State Bd. of Equalization & Assessment, 44 NY2d 960.) Insofar as inequality is concerned, the evidence is, as stated, limited by subdivision 3 of section 720 of the Real Property Tax Law.
In accordance with the foregoing, discovery shall be limited to only those matters that the court has found to be relevant. It appears, however, that much of the relevant evidence sought is in the possession of both the SBE A and the various intervenors-respondents. Therefore, to avoid a duplication of effort, disclosure will be allowed only against the SBEA at this time. The court’s decision on the petitioner’s disclosure application against the intervenors *428 respondents will be deferred pending completion of the examination of the SBEA. At that time, a determination will be made as to whether additional disclosure by the intervenors-respondents will be allowed.
The examination and production of records by the SBEA shall be limited to the following matters: (1) sales of real property in the taxing unit that took place during the tax years under review; (2) verification of such sales; (3) the uses to which the verified sales were put; (4) the equalization rate computed for taxing units outside of New York City for the rolls containing the assessment under review, the data base used, and the methodology employed to compute such rate; (5) the equalization rates used to assess the petitioner’s properties for the years under review.
Such examination and production of records shall take place at the office of the SBEA, Albany, New York, within 30 days from date of service of an order made herein, or at such time as may be agreed upon by counsel.

. The illegality portions of certain petitions for the years 1974-1975 were dismissed. (See Matter of Consolidated Edison Co. of N. Y. v State Bd. of Equalization & Assessment, 60 AD2d 356.) Inequality, as a ground for challenge, has been upheld. (Matter of Consolidated Edison Co. of N. Y. v State Bd. of Equalization & Assessment, 73 AD2d 31, affd 53 NY2d 975.)

. The State Board of Equalization and Assessment is vested with exclusive authority to make the assessment (Real Property Tax Law, § 600), and does so by using the State equalization rate. (Real Property Tax Law, § 606.)

. “The words ‘material and necessary’, are, in our view, to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason.” (Allen v Crowell-Collier Pub. Co., 21 NY2d 403, 406.)

. Such a proceeding is distinguishable from one brought by a municipality to review the State equalization rate under section 760 of the Real Property Tax Law, which is, by its terms, a review under CPLR article 78, and not a trial de novo. Thus, the standards set forth in Matter of County of Nassau v State Bd. of Equalization & Assessment (80 AD2d 9) are inapplicable.

. This section provides that such information may be disclosed “in accordance with properjudicial order or as otherwise provided by law”. Moreover, the privilege does not “prohibit the publication of statistics so classified as to prevent the identification of particular returns or items thereof”, nor the delivery of such information to certain governmental entities.

. Matter of Morris v Martin (82 AD2d 965), relied upon by the SBEA and the City of New York, is inapposite, in that it relates only to disclosure under the Freedom of Information Law (Public Officers Law, art 6). The decision does not address the question of the application of a qualified privilege where the disclosure is sought by court order.

. State equalization rate is admissible only as to taxing units outside of New York City. (Real Property Tax Law, § 720, subd 3.)

. Con Ed’s reliance on Matter of Adcor Realty Corp. v Srogi (54 AD2d 1096) is misplaced. There it was held that the city was collaterally estopped in contesting the rate, since it had admitted the rate in the prior case of Matter of Presidential Plaza Corp. v Srogi (50 AD2d 717, mot for lv to app den 38 NY2d 708). The admission in the latter case was based on an affirmative response to a notice to admit served pursuant to section 716 of the Real Property Tax Law. The latter section is not applicable here.